IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RICHARD A. HERNANDEZ,

    Petitioner,                                    No. CIV S-10-1342 CHS

    vs.

G.D. LUIS, Warden,

    Respondent.

<u>ORDER DENYING PETITION</u>

                             /

I.  INTRODUCTION

Richard A. Hernandez, a state prisoner, proceeds pro se with an amended petition for writ of habeas corpus [doc #18] pursuant to 28 U.S.C. § 2254.  The parties have consented to jurisdiction by a United States Magistrate Judge and this matter is submitted for decision.

II.  FACTUAL AND PROCEDURAL BACKGROUND[1]

Evidence at trial showed that, on June 6, 2005, Hernandez walked out of a Mervyns store wearing a pair of shoes he had been trying on and for which he had not paid. When confronted by a loss prevention officer outside the store, Hernandez said he had a pistol,

---

[1] *See People v. Hernandez*, No. C05F06745, 2008 WL 4727462 at 1 (Cal. Ct. App. 3rd Dist. 2008).

pulled what looked to be a gun from his waistband, and pointed it at the officer before making his escape.

About three weeks later, around 1:00 a.m. on June 26, 2005, Hernandez showed up at the house where he had lived with his former girlfriend, Hannah Blum, until about a week before. When she opened the door, he pushed his way in and became angry when he saw she had purchased new sandals for their children and a new purse for herself. He grabbed the purse, and when she tried to grab it back, he "[p]ulled a gun out" and pointed it at her from a few feet away, telling her to let go. They struggled for a time and he threatened to hurt her, until she finally ran to a nearby house and called the police.

On August 8, 2005, police went to Hernandez's mother's house to arrest him. Upon entering the house, one of the officers found a gun wrapped inside a T-shirt on a kitchen chair and ammunition in the pockets of a pair of jeans found with the shirt. Hernandez was later found hiding in the attic.

Based on the Mervyns incident, Hernandez was charged with robbery and being a felon in possession of a firearm. The information also alleged that he personally used a handgun in committing the robbery. Based on the incident with his former girlfriend, he was charged with robbery, making a criminal threat, and being a felon in possession of a firearm. The information also alleged that he personally used a handgun in committing the robbery and making the criminal threat. The information included a third count of being a felon in possession of a firearm based on the gun discovered at his mother's house when he was arrested there. Finally, although not relevant here, he was charged with inflicting corporal injury on his former girlfriend for an incident in July 2005. The information also alleged one prior conviction for enhancement purposes.

The jury found Hernandez guilty on all charges and found true the gun use enhancement allegations and the prior conviction allegation. The court sentenced him to an aggregate term of 20 years and four months in state prison. The California Court of Appeal,

Third District, affirmed the judgment and the California Supreme Court denied a petition for review. Hernandez sought habeas corpus relief in state court which was likewise denied.

### III. GROUNDS FOR RELIEF

The pending federal petition asserts the following five grounds for relief:

A. Insufficient evidence supported the two firearm use enhancements and three convictions for being a felon in possession of a firearm;

B. Trial counsel, Ken Brody, rendered ineffective assistance by failing to move to sever the four charged incidents for trial purposes;

C. Trial counsel rendered ineffective assistance in failing to object to the admission of Blum's testimony that Hernandez was in possession of a shotgun on an unspecified date;

D. Trial counsel rendered ineffective assistance during closing argument; and

E. Trial counsel's ineffective assistance violated Hernandez's right to due process of law.

For the reasons that follow, these grounds are without merit and the petition should be denied.

### IV. APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

An application for writ of habeas corpus by a person in custody under judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing *Engle v. Isaac*, 456 U.S. 107, 119 (1982)). This petition for writ of habeas corpus was filed after the effective date of, and thus is subject to, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Lindh v. Murphy*, 521 U.S. 320, 326 (1997); *see also Weaver v. Thompson*, 197 F.3d 359 (9th Cir. 1999). Under the AEDPA, federal habeas corpus relief is also precluded for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001).

This court looks to the last reasoned state court decision to determine whether the law applied to a particular claim by the state courts was contrary to the law set forth in the cases of the United States Supreme Court or whether an unreasonable application of such law has occurred. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002), cert. dismissed, 538 U.S. 919. The state court's factual findings are presumed correct if not rebutted with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Taylor v. Maddox*, 336 F.3d 992, 1000 (9th Cir. 2004). It is the habeas corpus petitioner's burden to show the state court's decision was either contrary to or an unreasonable application of federal law. *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002).

V.   DISCUSSION

A.   Sufficiency of the Evidence

Hernandez challenges the sufficiency of evidence supporting the two gun use enhancements and all three felon in possession convictions. In particular, he argues there was no proof that the gun he brandished during either robbery was a real firearm; the gun the Mervyns employee saw could have been an imitation, and Blum testified that the gun he used to rob her was the same toy gun she later saw. He further argues there was no nexus between himself and the gun found in his mother's house at the time of his arrest.

The Due Process Clause of the Fourteenth Amendment protects an accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. *In re Winship*, 397 U.S. 358, 364 (1970). On habeas corpus review, sufficient evidence supports a conviction so long as, "after viewing the

4

evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); s*ee also Prantil v. California*, 843 F.2d 314, 316 (9th Cir. 1988) (per curiam).

The *Jackson* standard is applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Davis v. Woodford*, 384 F.3d 628, 639 (9th Cir. 2004) (quoting *Jackson*, 443 U.S. at 319.)  The dispositive question is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Chein v. Shumsky*, 373 F.3d 978, 982 (9th Cir. 2004) (quoting *Jackson*, 443 U.S. at 318).  Under the AEDPA, this standard is applied with an additional layer of deference. *Juan H. v. Allen*, 408 F.3d 1262, 1274-75 (9th Cir. 2005).  This court must ask "whether the decision of the California Court of Appeal reflected an 'unreasonable application of' *Jackson* and *Winship* to the facts of this case." *Id*. (citing 28 U.S.C. § 2254(d)(1)).

Under California law, "any person who has been convicted of a felony... and who owns, purchases, receives, or has in his or her possession or under his or her custody or control any firearm is guilty of a felony." Cal. Penal Code § 12021(a)(1).  California law also provides a sentence enhancement of an additional and consecutive term of imprisonment for "any person who personally uses a firearm in the commission of a felony or attempted felony." Cal. Penal Code §12022.5(a).  For purposes of these offenses, California law defines "firearm" as "any device, designed to be used as a weapon, from which is expelled through a barrel, a projectile by the force of any explosion or other form of combustion." *See* Cal. Penal Code §§ 12001, 16520.[2]

/////

/////

---

[2] At the time of Hernandez's offense, a firearm was very similarly defined as "...any device designed to be used as a weapon, from which is expelled a projectile by the force of any explosion, or other form of combustion...." Cal. Penal Code § 12001(a)(1), effective January 1, 2004 to December 31, 2005.

1. **Felon in Possession Charges and Firearm Enhancements in Connection with the Two Robberies**

As to the Mervyn's incident, Jacob Soha, loss prevention supervisor, testified that when he struggled with Hernandez outside the store, Hernandez said "I have a pistol," and then reached into his waistband and produced "what looked to be a gun." (Reporter's Transcript ("RT") at 122, 129.) Soha, feeling "in danger," "walked back" and Hernandez made his escape; Soha radioed to another loss prevention employee on duty that a "weapon" had been pulled on him. (RT at 123.) At trial, Soha could not recall the size or type of gun that he saw. In previous statements, he had described the gun a small to medium sized semiautomatic handgun. (RT at 130.) Upon reflecting, Soha recalled that the gun was black and testified he that it was semiautomatic because it "didn't have the round cylinder on the gun." (RT at 134-35.) Soha had some prior experience with guns as a Boy Scout. (RT at 135.)

As to the Blum robbery, Blum testified Hernandez pulled a gun from his right pocket and pointed it at her. (RT at 163-64.) It looked like a handgun because there was "something on top that slid back and forth"; Hernandez was holding the gun with his right hand and appeared to be "trying to slide it with his other hand." (RT at 164.) Alex, the child of Blum and Hernandez, also saw Hernandez pull the gun on Blum. (RT at 256.) Alex testified he thought Hernandez loaded the gun while leaning against a wall. (RT at 258-59, 168.) Alex did not actually see Hernandez load the gun and did not see any bullets but "supposed" that was what Hernandez was doing. (RT at 262-63.) Alex fled to the neighbor's house and told the neighbor he thought Hernandez had a gun. (RT at 260, 304.)

Several weeks later, Hernandez showed Blum a toy gon and claimed, "This is what I used. Why did you tell them it was real?" (RT at 218.) Blum did not know if it was the same gun that Hernandez had displayed hen he robbed her, but she it looked "like the same thing" and it "had something on the top that slid back and forth." (RT at 218-19.) Blum testified she had seen Hernandez with a real gun and with a toy gun on previous occasions. (RT at 219-

20.)  Blum testified that Hernandez had once hidden a shotgun in her couch.  (RT at 220.)

Whether the defendant personally used a firearm is a factual question for the jury's determination.  *People v. Dominguez*, 38 Cal.App.4th 410, 421 (2nd Dist. 1995).  California courts have upheld firearm enhancements without direct evidence of a firearm, i.e., where the victim did not actually see a gun.  *See, e.g.*, *People v. Green*, 166 Cal.App.3d 514 (2nd Dist. 1985) (victim did not see the weapon but felt a cold object which she described as a gun and the defendant had bullets in his pocket when he was apprehended); *People v. Liner*, 168 Cal.App.2d 411, 413 (4th Dist. 1959) (court found adequate circumstantial evidence to support the jury's finding that the defendant was armed where victim sustained blunt force laceration to his head but did not see the object used).

As the state court noted in rejecting this claim on direct appeal, Hernandez's argument that the evidence was insufficient because the gun used to rob Mervyn's and Blum could have been a toy was effectively foreclosed by that court's decision in *People v. Monjaras*, 164 Cal.App.4th 1432 (2008).  In *Monjaras*,

> the defendant confronted a woman "late at night in the lighted parking lot of an apartment complex," told her, "'Bitch, give me your purse,' "and "pulled up his shirt and displayed the handle of a black pistol tucked in his waistband." (*Id.* at p. 1434.) On appeal, this court concluded the evidence was sufficient to "support[ ] a reasonable inference that the pistol he used was a real firearm, not a toy" and indeed went so far as to say that "a moribund claim like that raised by defendant has breathed its last breath." (*Id* . at p. 1435.) The court explained that "[c]ircumstantial evidence alone is sufficient to support a finding that an object used by a robber was a firearm." (*Id.* at p. 1436.) For example, a "'defendant's own words and conduct in the course of an offense may support a rational fact finder's determination that he used a [firearm].'" (*Id.* at pp. 1436-1437.) "Simply stated, when as here a defendant commits a robbery by displaying an object that looks like a gun, the object's appearance and the defendant's conduct and words in using it may constitute sufficient circumstantial evidence to support a finding that it was a firearm.... In other words, the victim's inability to say conclusively that the gun was real and not a toy does not create reasonable doubt, as a matter of law, that the gun was a firearm." (*Id.* at p. 1437.)

*People v. Hernandez*, *supra*, 2008 WL 4727462 at 2.

Here, evidence of Hernandez's statements and behavior supported the jury's finding that he had a real gun.  Likewise, both the Mervyn's loss prevention employee and Blum acted as reasonable people who had seen a gun would act.  Unlike the cases in which arming enhancements have been upheld where the victim did not actually see a gun, there was direct evidence in this case.  Accordingly, the state appellate court reasonably concluded:

> Here, with regard to the Mervyns robbery, the evidence showed that when the store loss prevention officer (who had had "a little" experience with guns "in the Boy Scouts") attempted to take defendant into custody for shoplifting, defendant said, " 'I have a pistol,'" reached into his waistband, pulled out "what looked to be a gun," and pointed it at the officer's chest from a foot and one-half away. Like the evidence in *Monjara,* this evidence was sufficient to support a reasonable inference that the pistol defendant used was real, not a toy.
>
> The same can be said of defendant's robbery of his former girlfriend. With regard to that incident, the evidence showed that when she tried to grab her new purse back from defendant, he "[p]ulled a gun out" and pointed it at her from a few feet away, telling her to let go of the purse. This evidence, too, was sufficient to support a reasonable inference that defendant had a real gun, not a toy. It is true that later defendant showed her a toy gun and told her it was the gun he had used when he took her purse, and it looked to her "like it was the same gun." The jury, however, was under no obligation to believe defendant's self-serving assertion to his former girlfriend, and thus this evidence did not, as a matter of law, undercut the circumstantial evidence from the incident itself based on which the jury was entitled to find that defendant used a real gun, rather than a toy.

*People v. Hernandez*, *supra*, 2008 WL 4727462, at 2-3.  The state court's decision that sufficient evidence supported the felon in possession charges and firearm enhancements in connection with the both robberies was consistent with, and a reasonable application of the standards of *Jackson* and *Winship* to the facts of this case.

        2.      Felon in Possession Charge in Connection with the Arrest

On August 8, 2005, police went to a residence to arrest Hernandez on his felony warrants.  Hernandez's mother answered the door, and she and two other women exited the residence.  (RT at 276-77.)  Hernandez's mother said no one else was in the house.  (RT at 278.)

Officer Van Dusen noticed what appeared to be male clothing stacked on a chair in the kitchen. The officer felt the clothing to locate identification and found a 357 Smith and Wesson revolver handgun wrapped up in a t-shirt. (RT at 278-80.) The clothing included a pair of jeans that contained five rounds of ammunition corresponding to the gun in the pocket. (RT at 279.) Hernandez was found hiding in the attic of the home. (RT at 281.)

On direct appeal, after noting that Hernandez failed to cite any relevant authority as to this point of contention, the state court held that the trial evidence provided a sufficient nexus to connect Hernandez to the gun:

> [W]e conclude the evidence was sufficient for the jury to draw a reasonable inference that the gun belonged to defendant. The gun was found wrapped in what appeared to be male clothing in a house where defendant was the only male. The jury could have reasonably concluded that defendant inadvertently left the bundle of clothing behind on the kitchen chair in his haste to hide in the attic when the police arrived, and none of the three females in the house made any effort to hide the bundle for him because they did not know what it contained. On this reasoning, the evidence was sufficient to prove simple possession.

*People v. Hernandez*, *supra*, 2008 WL 4727462, at 3. For the reasons given therein, the state court's rejection of this portion of the claim was also consistent with, and a reasonable application of the standards of *Jackson* and *Winship* to the facts of this case. No relief is available for Hernandez's claim of insufficient evidence.

B.   Ineffective Assistance- Severance

In a motion for new trial, Hernandez claimed trial counsel rendered ineffective assistance by failing to move to sever the charges against him by incident. The trial court denied the motion, ruling that the cases were properly joined under state law as crimes of the same class and that no basis for severance existed. (RT at 518-21.) In the last reasoned state court decision applicable to this claim, the Sacramento County Superior Court agreed with the trial court's ruling and denied the claim.

/////

To demonstrate a denial of the Sixth Amendment right to the effective assistance of counsel, a petitioner must establish that counsel's performance fell below an objective standard of reasonableness, and that he suffered prejudice from the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 690 (1984). Deficient performance requires a showing that counsel's performance was "outside the wide range of professionally competent assistance." *Id*. at 687 & 697. Prejudice is found where there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*.

"Surmounting *Strickland's* high bar is never an easy task," and review under the AEDPA is doubly deferential. *Harrington v. Richter*, 131 S. Ct. 770, 787 (2011) (citing *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010)). The relevant question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard. *Harrington*, 131 S. Ct. at 788.

California law provides for the joinder of offenses of the same class. *See* Cal. Penal Code § 954. Offenses "are of the same class when they all involve assaultive crimes against the person." *People v. Leney*, 213 Cal.App.3d 265, 269 (1989); *People v. Maury*, 30 Cal.4th 342, 395 (2003), *cert. denied*, 540 U.S. 1117 (2004). California has a "strong legislative policy in favor of joinder of charges unless there is prejudice." *People v. Gomez*, 24 Cal.App.4th 22, 28 (4th Dist. 1994); *People v. Soper*, 45 Cal.4th 759, 771-72 (2009). Thus, "the burden is on the party seeking severance to clearly establish that there is a substantial danger of prejudice requiring that the charges be separately charged." *Soper*, 45 Cal.4th at 773. In determining whether to grant a motion to sever joined offenses, a California trial court considers: (1) the cross-admissibility of the evidence in separate trials; (2) whether some of the charges are likely to unusually inflame the jury against the defendant; (3) whether a weak case has been joined with a strong case or another weak case so the total evidence may alter the outcome of some or all of the charges; and (4) whether one of the charges is a capital offense, or the joinder of the charges converts the matter into a capital case. *Alcala v. Superior Court*, 43 Cal.4th 1205, 1220-21

(2008).

Hernandez fails to show that trial counsel performed deficiently by not bringing a motion for severance since it is unlikely that such a motion would have been granted. *See Rupe v. Wood*, 93 F.3d 1434, 1444-45 (9th Cir. 1996) ("[T]he failure to take a futile action can never be deficient performance."), *cert. denied*, 519 U.S. 1142 (1997); *Lowry v. Lewis*, 21 F.3d 344, 346 (9th Cir. 1994) (counsel is not obligated to raise frivolous motions, and failure to do so cannot constitute ineffective assistance of counsel), *cert. denied*, 513 U.S. 1001 (1994). Presented with this claim of ineffective assistance of counsel in a motion for new trial, the same judge who presided over trial held:

> [F]irst, let me address the motion to sever. That issue that has been made by Mr. Tejeda on behalf of his client as a basis for a new trial. It's clear to the Court that the cases – that all the cases were properly joined. [....]
>
> So in any case, though Mr. Tejeda's main motion seems to be not that they were improperly joined, but they should have been severed. And Defense Counsel cites to the Court the case of Walker versus Superior Court and states that these counts in this case should have been severed because the weapons were not the same.
>
> However, the Court finds that Walker does not stand for the proposition that whenever there are separate offenses [that] involved unidentified weapons that severance is necessary.
>
> It merely held that when consolidation is based on the common element of a weapon being used, that if the offenses occur over a significant period and one charge involves potentially prejudicial evidence, the counts should be severed. The Court finds that Walker, the Walker case is distinguishable from this case, from the facts of this case that are before the Court.
>
> In this case the consolidation was based, at least in part, on the crimes being of the same class and that the time period between the offenses were shorter. In this case the time period is about 60 days. In the Walker case the time period was 106 days.
>
> The Court also finds that none of these charges, in the anonymous case, the case before me, are particularly inflammatory.
>
> Also, I note that Mr. Tejeda claims – on behalf of his client claims that two weak cases were joined together. But the Court finds that

> neither of the cases are weak; that there was substantial evidence to support the jury's guilty verdict – verdicts in this case. And, indeed, Miss Lobre, in her points and authorities, points out that each of the victims testified as to the two robbery cases.
>
> Now the specific prejudice that is highlighted by Mr. Tejeda identifies that there was some evidence that the gun used in the robbery in Count 3 was a fake gun, but that the jury, as Mr. Tejeda argues, was likely persuaded that it was real, because a real gun was later found in the Defendant's mother's residence. This is the Count 7.
>
> The Court finds that this did not prejudice the Defendant because there was substantial evidence to support the jury's verdict that this was a real gun; there was substantial evidence that the gun was not fake. Indeed, the statements of the Defendant that it was a fake gun, that evidence was something, at least according to the evidence that was presented at trial, was something that the Defendant said to the victim about two weeks after the incidents in question occurred. It was two weeks later. And Mr. Durenberger is correct and Miss Lobre in their briefs that the only evidence we have of that are the Defendant's self-serving statements which came in through the victim that he had had this discussion with her about two weeks later after the incident occurred.
>
> Also, I would note that the victim testified she wasn't sure if a fake gun was the same identical gun that had been used in the day in question. And, indeed, during the, as Mr. Tejeda refers to the Hannah robbery, with reference to that she reported to the police that it was a real gun. She testified here that it was a real gun. She said she just didn't– she said that the fake gun may have looked like the gun that was used on the day in question, but she wasn't sure; she didn't remember.
>
> I find that Defense Counsel's actions were reasonable in not bringing a motion to sever in that there was substantial evidence that the weapon was real and not fake. There was no prejudice to the Defendant given the overwhelming evidence supporting the jury's verdicts in all of theses [counts].

(RT at 518-521.)

As in the motion for new trial, Hernandez's argument in support of this claim in the pending federal petition similarly relies on the case *Walker v. Superior Court*, 37 Cal.App.3d 938 (1974). For the reasons set forth by the trial court, however, such argument fails to demonstrate that a motion to sever had a likelihood of success in the trial court. Hernandez further fails to demonstrate prejudice under the second prong of the *Strickland* test.

12

As to prejudice, the United States Supreme Court has recognized that "all joint trials, whether of several codefendants or of one defendant charged with multiple offenses, furnish inherent opportunities for unfairness when evidence submitted as to one crime (on which there may be an acquittal) may influence the jury as to a totally different charge...." *Spencer v. Texas*, 385 U.S. 554, 562 (1967). In evaluating prejudice for improperly joined claims, a reviewing court focuses on cross-admissibility of evidence and the danger of "spillover" from one charge to another, especially where one charge or set of charges is weaker than another. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004). Even in the absence of cross-admissibility, prejudice does not generally arise from joinder when the evidence of each crime is simple and distinct. *Bean v. Calderon*, 163 F.3d 1073, 1085 (9th Cir. 1998). The primary concern is whether the jury can reasonably be expected to compartmentalize the evidence so that evidence of one crime does not taint the jury's consideration of the other crime. *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

Here, although Hernandez challenges the sufficiency of the evidence with respect to some of his convictions, as explained in the previous subsection, the evidence against him on each of the challenged counts was at least sufficient for conviction, and arguably much stronger than that. There was no single charge for which the evidence was weak and thus no particular danger that the jury would be unable to properly compartmentalize the evidence. Importantly, all the charges against Hernandez were relatively simple, easy to understand, and presented in a straightforward manner. No one of the charges was inflammatory. Hernandez simply fails to show that he actually suffered prejudice from counsel's alleged failure to move to sever the charges.

For all these reasons, Hernandez cannot show that counsel's alleged ineffective assistance by failure to move to sever the counts affected the outcome of the trial and the claim should be denied. *See United States v. Rodriguez-Ramirez*, 777 F.2d 454, 458 (9th Cir. 1985) (no ineffective assistance of counsel when defendant failed to show severance motion "could

1  have been granted" or that he "suffered prejudice as a result of the unsevered trial").

         C.     Ineffective Assistance- Evidentiary Admission

As set forth in subsection A, *supra*, Blum testified that she saw Hernandez with a real gun on a previous occasion. Her testimony was as follows:

> Q    If you know, you said he didn't own a gun, but you have seen him with a real gun before. Did he show you the real gun before, or how did you observe him with a gun?
>
> A    I had seen it; he had shown me; he had torn apart the bottom of my couch to be able to hide a large shotgun, like a hunting rifle.
>
> Q    This was sometime that you guys were living together?
>
> A    Towards the end before I – he had taken off and I found out about the girl.
>
> Q    So he knew he wasn't suppose to have a gun?
>
> A    Yeah.
>
> Q    Okay. So when he brought the shotgun home he went through the trouble of tearing apart your couch and hiding it?
>
> A    Right.

(RT at 220.) There was no objection from defense counsel during or after this exchange.

Hernandez contends counsel rendered ineffective assistance in failing to object to this portion of Blum's testimony. Presented with a claim of ineffective assistance of trial counsel on this basis in the motion for new trial, the trial court held:

> Now with regards to the inadmissible evidence that Mr. Tejeda references in his moving papers, with respect to the hunting rifle that was placed underneath the couch, the Court finds no prejudice in that evidence being admitted given the minimal testimony about the shotgun or the hunting rifle and the fact that it was not referred to again during the trial or during closing arguments. This is – this was not prejudicial to the outcome of the case. And, indeed, had there been an objection or a curative instruction given it may have drawn, actually, more attention to the testimony at the time.

/////

14

> So I do not find that there was any prejudice to the Defendant as a result of this. I do not find that Counsel's representation of the Defendant was ineffective in that regard.

(RT at 521-22.) In the last reasoned state court decision applicable to this claim, the Sacramento County Superior Court agreed with the trial court's ruling and denied the claim.

As the trial court noted, an objection and request for a curative instruction would have drawn additional attention to the evidence. For this reason, a competent attorney might reasonably have made a tactical decision not to object in order to avoid highlighting the offending evidence another time for the jury. This is exactly the sort of situation in which the "strong presumption" that counsel's inaction was for tactical reasons, rather than because of sheer neglect, applies. *See Strickland*, 466 U.S. at 690. Since a reasonable argument exists that counsel satisfied *Strickland's* deferential standard, no relief is available.

D.   Ineffective Assistance- Closing Argument

Hernandez claims counsel rendered ineffective assistance during closing argument by effectively admitting that the gun found in the home at the time of Hernandez's arrest might have belonged to Hernandez. In particular, he complains that counsel stated "it can go either way" and "It may be clear and convincing that it's probably his." The relevant portion of counsel's argument in this regard was as follows:

> There is really nothing tying Mr. Hernandez to that revolver that was found.
>
> They were found around some male clothes, but there is no evidence that other males don't live in that house. There were no other males present at the time. There was Mr. Hernandez's mother and a couple of girls, I believe, his sister and another girl, but there is no evidence that those clothes that the gun was wrapped in were Richard Hernandez's.
>
> The Government didn't seek to have any fingerprints to try to take off the gun to tie it to Richard Hernandez. So, quite frankly, there really is no proof that Mr. Hernandez, in fact, possessed that gun. And, in fact, it is also reasonable to infer that, well, perhaps the other people in the house may have hidden that gun there. Yes, he was hiding in the attic. He didn't want to get caught by the police. He knew there were warrants out for him. But is that proof beyond

15

> a reasonable doubt that he, in fact, possessed that gun? You know, quite frankly, *it can go either way*, but from where I'm standing, an issue being able to go either way probably doesn't amount to proof beyond a reasonable doubt. It may be, you know, by a preponderance or clear and convincing. *It may be clear and convincing that it's probably his.* But "probably," again, is not beyond a reasonable doubt. So if you think to yourself that it was probably his, that doesn't cut it. That doesn't cut it in our system where the D.A. must prove each and every element beyond a reasonable doubt. So I would ask you to carefully consider the elements of those charges and enhancements that we are disputing.

(RT at 382-83 (emphasis added).)

In the last reasoned state court decision applicable to this claim, the California Court of Appeal disagreed with the contention that counsel effectively conceded the gun could have belonged to Hernandez. The state court held:

> [D]efense counsel did no such thing. What counsel did was argue that there was no proof beyond a reasonable doubt that the gun belonged to defendant, and in the course of this argument he contrasted the reasonable doubt standard with other lesser standards of proof....
>
> By no stretch of the imagination did the foregoing argument amount to an admission, veiled or otherwise, that the gun belonged to defendant. Rather, it was an argument for why the prosecution had failed to meet its burden of proof- an argument that favored defendant. Defendant has not shown that this argument fell below the standard of a reasonably competent attorney.

*People v. Hernandez*, *supra*, 2008 WL 4727462 at 4 -5.

"The right to effective assistance extends to closing arguments." *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). "Nonetheless, counsel has wide latitude in deciding how best to represent a client, and deference to counsel's tactical decisions in his closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage." *Id*. at 5-6. "Judicial review of a defense attorney's summation is therefore highly deferential- and doubly deferential when it is conducted through the lens of federal habeas." *Id*. at 6.

Under this demanding standard, Hernandez's claim attacking trial counsel's argument fails. Counsel's challenged statements, even if they could properly be characterized as

16

concessions, constituted only two sentences of the argument and did not constitute deficient performance. *See Hovey v. Ayers*, 458 F.3d 892, 906 (9th cir. 2006) (rejecting argument that counsel defending defendant charged with first degree murder performed deficiently by arguing "I submit to you that it's within the realm that there could be findings... of willful, deliberate and premeditated... yet... there may be some reasonable doubt."); *see also, generally, United States v. Swanson*, 943 F.2d 1070, 1075-76 (9th Cir. 1991) (in some cases a trial attorney may find it advantageous to his client's interests to concede certain elements of an offense or his guilt of one of several charges."); *Yarborough*, 50 U.S. at 9 (calling client a "bad person, lousy drug addict, stinking thief, jail bird," not ineffective assistance of counsel because "[b]y candidly acknowledging his client's shortcomings, counsel might have built credibility with the jury and persuaded it to focus on the relevant issues in the case."). At no point did counsel recommend that the jury find Hernandez guilty. At no point did counsel suggest the prosecution had met its burden of proving him guilty beyond a reasonable doubt. To the contrary, the challenged statements were part of a larger attempt to expose the deficiencies in the prosecution's case and demonstrate the applicable standard of proof was not met. A reasonable argument exists that counsel's argument fell within the broad range of competent representation and no relief is available.

        E.      Ineffective Assistance- Denial of Due Process

Hernandez also claims he suffered a denial of due process based on the alleged ineffective assistance rendered by trial counsel. Respondent asserts this claim is procedurally barred because the California Supreme Court denied it with a citation to *In re Robbins*, 18 Cal.4th 770, 780 (1998), indicating that the petition was untimely. In *Robbins*, the California Supreme Court held that a prisoner must seek habeas corpus relief from California courts without "substantial delay." *Id*.

Federal courts will generally not review a question of federal law decided by a state court if its decision rests on a state law ground that is independent of the federal question

and adequate to support the judgment. *Coleman v. Thompson,* 501 U.S. 722, 750 (1991). "The state-law ground may be a substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the merits." *Walker v. Martin*,131 S.Ct. 1120, 1127 (2011), (citing *Wainwright v. Sykes*, 433 U.S. 72, 81-82, 90 (1977)).  For a state law ground to be independent, the basis for the decision must not be interwoven with federal law. *LaCrosse v. Kernan,* 244 F.3d 702, 704 (9th Cir. 2001).  To be deemed adequate, it must be "firmly established" and "regularly followed." *Beard v. Kindler*, 130 S.Ct. 612, 617 (2009) (quoting *Coleman*, 501 U.S. at 729); *Poland v. Stewart,* 169 F.3d 575, 577 (9th Cir. 1999).  An exception to the general rule of procedural bar exists if the prisoner can demonstrate either cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750; *see also Sykes*, 433 U.S. at 84-85.

Once the state has pleaded the existence of an independent and adequate state procedural ground as an affirmative defense, as it has done in this case, the burden shifts to petitioner to place that defense in issue. *Bennett v. Mueller*, 322 F.3d 573, 586 (9th Cir. 2003). Here, Hernandez filed a response to respondent's answer but did not contest the adequacy of the asserted procedural bar.  In any event, respondent has met the ultimate burden of demonstrating procedural default.  The Ninth Circuit has recognized that the application of California's timeliness rule "became independent of federal law in 1998." *Townsend v. Knowles*, 562 F.3d 1200, 1206 (9th Cir. 2009) (citing *Bennett*, 322 F.3d at 582-83) (abrogated on other grounds in *Walker v. Martin*,131 S.Ct. 1120).  In addition, the United States Supreme Court recently held on habeas corpus that the timeliness rule at issue, though discretionary in application, is adequate because it is both "firmly established" and "regularly followed." *Walker v. Martin*, 131 S.Ct. at 1128-29. Accordingly, the procedural rule imposed by the state of California should be found independent and adequate to support to support the state court judgment. *See Id*. at 1128-29. Hernandez's due process claim is procedurally barred in this court.

## VI.  CONCLUSION

For the foregoing reasons, the petition is hereby DENIED.  Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  A certificate of appealability may issue only "if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Because a substantial showing of the denial of a constitutional right has not been made in this case, a certificate of appealability shall not issue.

IT IS SO ORDERED.

DATED: January 25, 2012

_____
CHARLENE H. SORRENTINO
UNITED STATES MAGISTRATE JUDGE